JUDGE LYNCH

05 CV 8951

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

LAURA HINTON

            Plaintiff,

        -against-

THE CITY COLLEGE OF NEW YORK and FRED
REYNOLDS.
           Defendants.

------------------------------------------------------------------x

**COMPLAINT
AND JURY DEMAND**



**COMES NOW**, the Plaintiff Laura Hinton (hereinafter "Professor Hinton"or "Plaintiff"),

by and through her undersigned attorneys, The Law Offices of Neal Brickman, and as and for her

Complaint against the City College of New York  (hereinafter " the College") and Fred Reynolds

(hereinafter "Reynolds" or together with the College, "Defendants" ) states and alleges as

follows:

<u>**Preliminary Statement**</u>

    1. This action seeks compensatory and punitive damages, costs and attorneys' fees,

against the City College of New York and Reynolds  for their unlawful discrimination against,

and retaliatory treatment of, Professor Hinton under Title VII of the Civil Rights Act of 1964,

42 U.S.C Section 2000 *et seq*, as amended, as well as applicable New York State and New

York City statues.  In addition, the Plaintiff alleges that the Defendant violated her rights under

the  Americans' with Disabilities Act of 1990 (ADA). 42 U.S.C. s 12101 *et seq*.

    2.    Plaintiff alleges that she, along with other women in her department, were

wrongfully subjected to sexually harassing conduct and discriminatory treatment. Plaintiff further alleges that once she complained about the discrimination and harassment – – and began to assert her rights – – defendants unlawfully retaliated against her by, *inter alia*, inequitably scheduling her teaching load, denying her adequate office space and support, spreading false and malicious rumors about her, isolating her from the department's governance, denying her promotion to Full Professor and otherwise rendering her working environment hostile and intolerable. Finally, the Plaintiff alleges that the Defendant interfered with her request for a reasonable accommodation under the Americans' with Disabilities Act of 1990 (ADA). 42 U.S.C. s 12101 *et seq*.

### Parties

3. Professor Hinton is, and was at all times relevant hereto, a Citizen of the United States, residing at 396 3rd Avenue, Apt 3N, New York, New York, 10016.

4. Upon information and belief, the College is an institute of higher learning, licensed, *inter alia*, by the State of New York, with its principal location at Convent Avenue at 138th Street, New York, New York, 10031. The College is, upon information and belief, part of the New York City University System. Upon information and belief, defendant College, by and through its committee on Personnel and Budget ("P&B") is, and was at all times relevant hereto, authorized to grant promotions to teaching personnel.

5. Reynolds is, and was at all times relevant hereto, a Citizen of the United States, residing 730 Washington Ave, Apt. 5A, New York, N.Y. 10040. Reynolds is, and was at all times relevant hereto, Professor Hinton's employer inasmuch as he controlled the terms and conditions of her employment.

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 in that this matter presents the Court with a "federal question" as a claim herein arises under 42 U.S.C. § 2000(e), as amended, including, but not limited to, the Civil Rights Act of 1991 and the Americans' with Disabilities Act of 1990 (ADA). 42 U.S.C. s 12101 *et seq.*

7. Venue is properly laid in this District because the unlawful employment practices complained of herein were committed in this Judicial District.

## Procedure Background

8. On or about March of 2004, the Plaintiff filed a charge with the EEOC alleging that she was the victim of illegal gender discrimination and retaliation; and that her rights under the Americans with Disabilities Act had been violated. On or about August 3, 2005, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") in connection with this charge. This action is filed within ninety (90) days of plaintiff's receipt of said Notice of Right to Sue from the EEOC. (A copy of the right to sue letter is attached hereto and made a part hereof as Exhibit "A")

## Factual Background

9. Professor Hinton began teaching as an Assistant Professor of English with the City College of New York in 1991. Professor Hinton performed extremely well in this capacity and received positive evaluations. As a result of this strong performance, Professor Hinton was placed on a tenure-track line in1993.

10. Professor Hinton was actively publishing during this period. She published several

articles in prestigious journals throughout the 1990's. In addition, she published a book in a major university series in 1999.

11. In September of 1994, a new Chairman, Steven Urkowitz, was named for the English Department. Mr. Urkowitz made sexual and inappropriate comments about Professor Hinton regarding her level of attractiveness and ridiculed her scholarly works in the field of feminism.

12. When Professor Hinton complained about these comments to the Dean of Humanities, Mr. Urkowitz and the Dean of Humanities began a campaign of retaliation against Professor Hinton. Specifically, Mr. Urkowitz denied Professor Hinton the opportunity to teach certain upper-level courses that she had previously taught. He artificially downgraded her teaching evaluations and he undermined her initial application for tenure.

13. Although Professor Hinton ultimately obtained tenure by appealing to the Office of the President, this did not end the campaign of discriminatory treatment against her. On the contrary, the discriminatory and retaliatory treatment of Professor Hinton continued to be a frequent, regular and ongoing occurrence.

14. Throughout this period, Professor Hinton was also subjected to sexual and insulting comments by Interim Dean William Herman. These comments included comments about her overall attractiveness and referenced specific body parts.

15. When, based on these comments, Professor Hinton brought an Affirmative Action Charge naming Professor Herman among those involved in the discriminatory treatment of the Plaintiff, Dean Herman began making disparaging remarks about Professor Hinton's work to her colleagues.

16. Moreover, Professor Hinton's request for a promotion to Associate Professor was

denied at the department level shortly after she filed this Complaint.

17. At approximately the same time, Professor Hinton also began developing severe health problems and became partially disabled as a result of an intestinal infection and Chronic Fatigue Syndrome. Upon information and belief, these health problems were caused by the stress of being subject to a continuing course of discriminatory and retaliatory treatment.

18. In 2000, after pursuing a protracted appeal process in both her tenure case and her promotion cases, Professor Hinton was finally promoted to Associate Professor and began serving as Deputy Chair.

19. She performed admirably in this role and was commended by colleagues on the manner in which she executed her duties.

20. However, she was forced to relinquish her position as Deputy Chair in late 2000, when her health problems worsened requiring her to take a medical leave of absence.

21. After returning from medical leave, Professor Hinton published her second book.

22. In early 2002, Professor Reynolds was appointed Chair of the English Department. Under Professor Reynolds tenure as Chair, Professor D'Iorio, an extremely talented female Latino Professor, was denied the opportunity to accept a prestigious Puerto Rican Studies Fellowship, an award that might have provided Professor D'Iorio with the necessary research time to obtain tenure.

23. Professor Hinton challenged this decision, expressing concern that the decision was motivated by Professor D'Iorio's ethnicity and gender. Professor Hinton also pointed out that the lack of diversity in the English Department would be further exacerbated by the loss of Professor D'Iorio. In addition, Professor Hinton addressed other inequities in the treatment of women in the English Department.

24.  With Professor Hinton's encouragement, Professor D'Iorio ultimately filed an Affirmative Action Charge against Reynolds in connection with the decision to deny her the Puerto Rican Studies Fellowship.

25.  When Professor Hinton returned to campus in Fall of 2002, Professor Hinton was approached by Chair Reynolds who suggested that she take early retirement. Since Professor Hinton had been back at work for over a year, had always received positive evaluations, and had been successfully managing her health condition at this time, she was surprised by his suggestion.

26.  Although Professor Hinton explained that early retirement was not an option for her, Chair Reynolds continued to pressure Professor Hinton throughout the fall semester to take early retirement. He repeatedly sent her memos suggesting her health condition impaired her ability to work and that she should meet with him to discuss her "early retirement." Given that Professor Hinton had already been back at work for a year and was successfully managing her health condition, she found these suggestions puzzling.

27.  The only possible explanation, she concluded, was that Chair Reynolds was pressuring her to retire in retaliation for her complaints about the treatment of women in the English Department.

28.  In addition, Chair Reynolds interfered with Professor Hinton's efforts to obtain certain reasonable accommodations that she required for the management of her health condition. Specifically, he scheduled her to perform non-contractual volunteer work during the hours that Professor Hinton had scheduled for her pain management program. In addition, when, on occasion, Professor Hinton would call in sick, Chair Reynolds subjected her to unnecessary harassment. No other Professor was subjected to this type of conduct when they

attempted to call in sick.

29.  Chair Reynolds also subjected Professor Hinton to other types of harassment. When Professor Hinton submitted a grant application, Chair Reynolds refused to sign it until extensive information had been granted. The usual practice of the Department and the Division is for the Chair to sign these applications pro forma.

30.  Since no other Department member was subject to similar harassment, Professor Hinton could only conclude that she was being discriminated and retaliated against for standing up for the rights of women in the Department.

31.  Based on the discriminatory and harassing conduct that she encountered, Professor Hinton filed an Affirmative Action Complaint against Chair Reynolds, charging that she was being discriminated against because she was a woman and she stood up for the rights of other women in the English Department. This Complaint clearly was not taken seriously by the College inasmuch as it was summarily dismissed without serious investigation.

32. In fact, Chair Reynolds was promoted to Assistant Dean Reynolds after the Complaint was filed.

33. The discriminatory and retaliatory treatment of Professor Hinton did not end after Fred Reynolds ceased to be Chair. On the contrary, his successor, Chair Lindsay Abrams, collaborated with Dean Reynolds and the College administration to continue the campaign of discrimination against Professor Hinton.

34. In the Spring of 2003, Professor Hinton was originally given a less favorable teaching schedule than other professors. In addition, the College changed one of her classes without giving her proper notification.

35. Moreover, Chair Abrams expressly criticized Professor Hinton in writing  for

bringing a complaint against Dean Reynolds. In addition, Chair Abrams excluded Professor

Hinton from prestigious professional committees. Chair Abrams and the Dean's Administration

denied Professor Hinton adequate classroom space even though suitable space was available.

When Professor Hinton was subject to a physically threatening encounter with a disgruntled

student, Professor Abrams refused to support Professor Hinton or to respond to her concerns.

Instead Chair Abrams subjected her to a lengthy investigation.

36. When, in early 2004, Professor Hinton applied for a promotion to full professor, Chair

Abrams cursorily denied Professor Hinton's application without giving it any consideration.

Given that Professor Hinton is eminently qualified for this position, the only possible explanation

for this decision is that it is part of an ongoing campaign of discrimination and retaliation against Professor

Hinton by the College Administration.

37. In addition, Professor Hinton was continually denied internal grant research funding.

In early 2004, Professor Hinton was  denied matching grant funding from Dean Reynolds. This

money had been previously promised to her and is necessary to support an on-going

poetry series that Professor Hinton organizes on behalf of the Department. Professor Hinton was

also turned down for a competitive sabbatical leave by the President in early 2004.

38. Subsequently, in 2004, Professor Hinton was excluded from a meeting for Full

Professor candidates even though she had repeatedly expressed interest in this position and was

eminently qualified for it.

39. When Professor Hinton subsequently submitted an application for full professor, she

was informed by Chair Abrams that the committee would not hear her case.  Chair Abrams

refused to explain the reason for this decision.

40. Although Professor Hinton received a positive evaluation in May of 2004, the

discriminatory and retaliatory treatment of her continued.

41. In the fall of 2004, Professor Hinton was denied appropriate classroom space for the fall 2004 semester and prevented from serving on any prestigious personnel committees. The only possible explanation for this treatment is that she was being subject to illegal discrimination and retaliation by the College Administration.

42. Subsequently, in the fall of 2004, Professor Hinton wrote a letter to Chair Abrams indicating that she was going to again apply for full professor and requesting clarification of the proper procedure. Professor Hinton never received a response to her request for clarification of the procedure. Shortly, thereafter, Professor Hinton was denied permission to teach an advanced course in Feminist Thought.

43. This course of discrimination is on-going and has continued into 2005. In April of 2005, Professor Hinton was again turned down for a promotion to Full Professor.

44. In addition, when Professor Hinton called in sick on two occasions as a result of a severe flu, she was subject to a month-long investigation; accused of losing control of her class and accused of failing to properly control her class.

45. In July of 2005, Dean Reynolds was again promoted despite Professor Hinton's serious allegations of discrimination and harassment against him.

46. In August of 2005, after being turned down several times for a promotion to full professor, Professor Hinton asked for a replacement to present her promotion appeal case because of the discriminatory treatment that she had received in the past. This request was denied.

47. In September of 2005, Professor Hinton appealed her promotion to the P and B Committee. This appeal was turned down.

48. Despite several applications, Professor Hinton continues to be turned down for a promotion to full professor, a position for which she is eminently qualified. In addition, she continues to be subject to harassment and much more stringent standards than other faculty members.

49. The only possible explanation for this conduct is that Professor Hinton is being discriminated against on the basis of her gender and her disability and that Professor Hinton is being retaliated against for her complaints about the treatment of women in the Department.

## As and for a First Cause of Action
### (Gender Discrimination in Violation of the Civil Rights Act of 1964)

50. The Plaintiff incorporates by reference paragraphs 1 through 49 of the complaint as if such paragraphs were fully restated herein.

51. Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of gender.

52. The Plaintiff was subject to disparate treatment and more stringent standards than other member of the Department because she is a woman who asserted the rights of women at the College.

53. Male members of the Department and female members, who behaved in a submissive and traditionally feminine manner, were not subject to this disparate treatment or these more stringent standards.

54. In addition to denying the Plaintiff adequate office space and support, denying her research grants, assigning her an inequitable teaching schedule, and isolating her from the

department's governance, the College also denied the Plaintiff a promotion to Full Professor. She was eminently qualified for this position.

55. Other members of the Department were promoted to full professor even though they were objectively less qualified than the Plaintiff. These members of the Department were either males or females who acted in a submissive and traditionally feminine manner.

56. The aforementioned conduct constitutes illegal discrimination in violation of the Civil Rights Act of 1964.

57. As a direct result of this discrimination, the Plaintiff has suffered damages including loss of past and future earnings, other employment benefits, emotional injuries and damages to her professional reputation.

WHEREFORE, the Plaintiff demands judgment against the College for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00, punitive damages in an amount to be determined at trial, together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

## As and for a Second Cause of Action
### (Gender Discrimination in Violation of the Executive Law § 296)

58. Paragraphs 1 through 57 of the complaint are incorporated herein with the same force and effect as if pleaded separately.

59. By reason of the acts of discrimination detailed herein, defendant has violated New York Executive Law § 296(1)(a), and has caused plaintiff to suffer damages, including loss of past and future earnings, emotional injuries, and damage to her professional reputation.

WHEREFORE, the Plaintiff demands judgment against the College and Reynolds for

compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00

together with interest, the costs and disbursements of this action, and such other and further relief

as this Court deems just and proper.

**As and for a Third Cause of Action**
**(Violation of New York City Administrative Code §8-107 and §8-502, *et seq.*)**

60  Paragraphs 1 through 59 are incorporated herein with the same force and effect as if

pleaded separately.

61. By reason thereof, defendants have violated New York City Administrative Code

§8-107 and §8-502, *et seq.*, and has caused plaintiff to suffer damages, including loss of past

and future earnings, other employment benefits, and emotional injuries

**WHEREFORE**, the Plaintiff demands judgment against the College and Reynolds for

compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00

and for punitive damages in an amount to be determined at trial, but not less than $ 3,000,000.00

together with interest, the costs and disbursements of this action, including reasonable attorneys'

fees, and such other and further relief as this Court deems just and proper.

**As and for a Fourth Cause of Action**
**(Retaliation in Violation of Title VII)**

62.  The Plaintiff incorporates by reference paragraphs 1 through 61 of the complaint as

if such paragraphs were fully restated herein.

63.  Title VII of the Civil Rights Act of 1964 prohibits retaliation against any employee

who engages in a protected activity under Title VII.

64. The Plaintiff engaged in a protected activity under Title VII by filing an affirmative

action charge against Dean Reynolds and by informally complaining about the treatment of

women and minorities in the Department.

65. Shortly after bringing an affirmative action charge and complaining about the treatment of women in the Department, the Plaintiff was criticized by Chair Abrams for bringing the charge. The Plaintiff was then denied a promotion to full professor, a position for which she is eminently qualified. In addition, the Plaintiff was denied grant money, was denied adequate classroom space and was prohibited from serving on any prestigious committees.

66. The foregoing conduct constitutes retaliation in violation of the Title VII of the Civil Rights Act of 1964.

67. As a direct result of this retaliation, the Plaintiff has suffered damages including loss of past and future earnings, other employment benefits, emotional injuries and damages to her professional reputation.

**WHEREFORE**, the Plaintiff demands judgment against the College for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00, punitive damages in an amount to be determined at trial, together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

### As and for a Fifth Cause of Action
### (Retaliation under Executive Law § 296)

68. The Plaintiff incorporates by reference paragraphs 1 through 67 of the complaint as if such paragraphs were fully restated herein.

69. The foregoing conduct constitutes retaliation in violation of Executive Law § 296 *et seq.*

70. As a direct result of this retaliation, the Plaintiff has suffered damages including loss of past and future earnings, other employment benefits, emotional injuries and damages to her professional reputation.

**WHEREFORE**, the Plaintiff demands judgment against the College and Reynolds for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 together with interest, the costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

## As and for a Sixth Cause of Action
**(Retaliation under New York City Administrative Code §8-107 and §8-502, *et seq.*)**

71. The Plaintiff incorporates by reference paragraphs 1 through 70 of the complaint as if such paragraphs were fully restated herein.

72. The foregoing conduct constitutes retaliation in violation of New York City Administrative Code § 8-107 and § 8-502.

73. As a direct result of this retaliation, the Plaintiff has suffered damages including loss of past and future earnings, other employment benefits, emotional injuries and damages to her professional reputation.

**WHEREFORE**, the Plaintiff demands judgment against the College and Reynolds for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 and for punitive damages in an amount to be determined at trial, but not less than $ 3,000,000.00 together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

## As and for a Seventh Cause of Action
**(Violation of the Americans with Disabilities Act)**

74. The Plaintiff incorporates by reference paragraphs 1 through 73 of the complaint as if such paragraphs were fully restated herein.

75. Professor Hinton has been a Professor of English with the City College of New York in 1991. Professor Hinton performed extremely well in this capacity and received positive evaluations.

76. Several years after Professor Hinton began teaching, she developed severe health problems and became partially disabled as a result of an intestinal infection and Chronic Fatigue Syndrome.

77. Dean Reynolds along with other at the College have been aware of Hinton's disability since the time it arose.

78. Professor Hinton has performed all of her job duties in a more than satisfactory manner since her date of hire, and has been a loyal employee.

79. When Professor Hinton took a necessary medical leave to tend to her disability, Reynolds encouraged her to retire.

80. When Professor Hinton requested, as a reasonable accommodation, to be able to attend pain management sessions, Reynolds initially refused to grant her this accommodation. In addition, he scheduled Professor Hinton for Non-Contractual volunteer work during the hours that she had indicated she needed to attend her pain management sessions.

81. Because of her disability, Professor Hinton has repeatedly been denied a promotion to Full Professor even though she is eminently qualified for this position.

82. By reason thereof, defendants have violated the Americans with Disabilities Act and have caused plaintiff to suffer damages, including loss of past and future earnings, other employment benefits, and emotional injuries.

**WHEREFORE**, the Plaintiff demands judgment against the College for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 together with interest, the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

### As and for an Eighth Cause of Action
### (Disability Discrimination in Violation of the Executive Law § 296)

83. Paragraphs 1 through 82 of the complaint are incorporated herein with the same force and effect as if pleaded separately.

84. By reason of the acts of discrimination detailed herein, defendant has violated New York Executive Law § 296(1)(a), and has caused plaintiff to suffer damages, including loss of past and future earnings, emotional injuries, and damage to her professional reputation.

**WHEREFORE**, the Plaintiff demands judgment against the College and Reynolds for compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00 together with interest, the costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

### As and for a Ninth Cause of Action
### (Violation of New York City Administrative Code §8-107 and §8-502, *et seq.*)

85. Paragraphs 1 through 84 are incorporated herein with the same force and effect as if pleaded separately.

86. By reason thereof, defendants have violated New York City Administrative Code §8-107 and §8-502, *et seq.*, and have caused plaintiff to suffer damages, including loss of past and future earnings, other employment benefits, and emotional injuries

**WHEREFORE**, the Plaintiff demands judgment against the College and Reynolds for

compensatory damages in an amount to be determined at trial, but not less than $ 1,000,000.00

and for punitive damages in an amount to be determined at trial, but not less than $ 3,000,000.00

together with interest, the costs and disbursements of this action, including reasonable attorneys'

fees, and such other and further relief as this Court deems just and proper.

### Jury Trial Demanded

87. Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a jury trial on each and every

issue in this action.

Dated: New York, New York
     October 21, 2005

                                                  Neal Brickman (NB 0874)
                                                  *Attorneys for the Plaintiff*
                                                  *Laura Hinton*
                                                  The Law Offices of Neal Brickman
                                                  317 Madision-21st Floor
                                                  New York, N.Y. 10017
                                                  (212) 986-6840

**Exhibit A**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Rodney E. Plummer
Federal Investigator
Phone (212) 336-3767
Fax (212) 336-3790

Laura Hinton
396 3ʳᵈ Avenue, Apt 3N
New York, New York 10016

**Re: <u>Laura Hinton v. City College of New York</u>**
**EEOC Charge No.  160-2005-02310**

Dear Ms. Hinton:

The Equal Employment Opportunity Commission (hereinafter referred to as the Commission) has concluded its inquiry into your allegations of discrimination.  The Commission's procedures require us to focus our limited resources on those cases that are most likely to result in findings of a violation of the laws we enforce.  In accordance with these procedures, the Commission has evaluated your charge, including the information you provided, and has concluded that the evidence is not sufficient to continue this investigation.

You allege that you were discriminated against because of your disability in violation of the Americans with Disabilities Act of 1990, as amended.  You further allege that you were discriminated against because of your sex and retaliated against when you complained, in violation of Title VII of the Civil Rights Act of 1967, as amended.

A review of your charge indicates that your allegations from 1994 through January 2004 are untimely and therefore beyond the jurisdiction of the Commission.

Regarding the issue of promotion, Respondent has provided evidence to show that you failed to adhere to the proper procedures in order to be considered for promotion.  Therefore you were not considered for promotion in 2004.

Respondent asserts that an investigation into your allegations of being given a "less favorable class schedule" and "denied appropriate classroom space" was conducted by the affirmative action officer who determined that the allegations were unsubstantiated.  There is no evidence which suggests that Respondent's treatment of you is in violation of Title VII of the Civil Rights Act in this regard.

Furthermore, there is no evidence to show that the class assignments and classroom space provided was in retaliation for having complained about discrimination.

Given the above information, it is unlikely that further investigation will result in findings of a violation of the laws we enforce. This determination concludes the processing of this charge.

Enclosed is your Notice of Right to Sue allowing you to file suit in Federal District Court against the Respondent if you so choose. This letter will be the only notice of dismissal sent by the Commission. Upon receipt of this letter you may only pursue this matter by filing suit within 90 days, otherwise, your right to sue will be lost.

Sincerely,

Rodney E. Plummer
Federal Investigator

8/1/05
Date

cc: The Law Office of Neal Brickman
    317 Madison Avenue, 21st Floor
    New York, New York 10017
    Attn: Nicole Van Gendt

EEOC Form 161 (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | From: |
|---|---|
| **Laura Hinton**<br>**396 3rd Avenue, Apt 3N**<br>**New York, New York 10016** | **Equal Employment Opportunity Commission**<br>**New York District Office**<br>**33 Whitehall Street, 5th Floor**<br>**New York, New York 10004-2112** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **160-2005-02310** | **Legal Unit  E-2** | **(212) 336-3721** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          8/1/05
Spencer H. Lewis, Jr., District Director          *(Date Mailed)*

Enclosure(s)

| cc: | |
|---|---|
| **The City University of New York**<br>**535 East 80th Street**<br>**New York, New York 10021**<br>**Attn: Office of General Counsel**<br>**Abby Jennis** | **C/P Attny: Law Office of Neal Brickman**<br>**317 Madison Avenue, 21st Fl.**<br>**New York, New York 10017**<br>**Attn: Nicole Van Gendt** |

# FACTS ABOUT FILING
## AN EMPLOYMENT DISCRIMINATION SUIT
## IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The **United States District Court for the Southern District of New York** is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester.

- The **United States District Court for the Eastern District of New York** is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk.

- The **United States District Court for the Western District of New York** is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates.

- The **United States District Court for the Northern District of New York** is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *pro Se* Attorney has offices at 10 Broad Street in Utica New York.

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit **must** be filed in U.S. District Court within __90 days__ of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

Information Sheet (page 1 of 2)

## DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

## WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $120.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(312) 988-5522

New York State Bar Association
(800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**