```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
LAURA HINTON,                          :
                                       :    DEFENDANTS' LOCAL
                     Plaintiff, :           CIVIL RULE 56.1
                                       :    STATEMENT
          -against-                    :
                                       :    05 Civ. 8951 (GEL)
THE CITY COLLEGE OF NEW YORK and :
FRED REYNOLDS,                         :
                                       :    ORIGINAL FILED BY ECF
                     Defendants. :
                                       :
-----------------------------------X
```

Pursuant to Local Civil Rule 56.1 of the United States
District Court for the Southern District of New York, defendants
City University of New York ("CUNY")[1] and Fred Reynolds
("Reynolds") by their attorney ANDREW M. CUOMO, the Attorney
General of the State of New York, hereby submit a statement of
the material facts as to which they contend that there is no
genuine issue to be tried.

1.    Plaintiff Laura Hinton, a female, is full-time, tenured
Associate Professor in the Department of English at the City
College of New York ("CCNY").  Compl., ¶¶ 9, 13, 28; Hinton Depo.
at 6.

2.    CCNY is a CUNY senior college.  Williams Decl., ¶ 1.

3.    CUNY's academic year begins on September 1st and ends

---

[1]    Because the City College of New York is a senior college
within CUNY with no separate corporate existence, it should not
be a defendant in this action and CUNY is the sole proper
defendant.  See N.Y. Educ. L. §§ 6202 (2), 6203, 6206.

1

on August 31st of the following year. Williams Decl., ¶ 24. It encompasses a Fall semester, which runs from September to December, a Spring semester, which begins at the end of January and runs through May, and a short Summer term, which occurs in June and July. Id.

**The Promotion Process At CCNY**

4.      The promotion process for full-time faculty at CCNY is intended to acknowledge and reward those faculty members whose academic work enhances the educational mission and reputation of the departments and the college, particularly through the acquisition of grants, participation in quality research projects, and publication of scholarly works. Williams Decl., ¶ 4.

5.      The promotion process at CCNY includes review by committees at the departmental level, division level, and college-wide level, with final approval by the college President. Williams Decl., ¶ 7; Hinton Depo. at 24.

6.      Faculty who wish to be considered for promotion are required to announce their intention during the Fall semester. Abrams Decl., ¶ 3. This provides the chair with time to assist the faculty member in assembling a curriculum vitae, and other documents in the promotion application, before the promotion is reviewed by the departmental promotions committee in the Spring semester. Id.

2

7.    The promotion process begins with an initial review, the "first screening," of the candidate's application by a promotions committee within his or her department, comprised of faculty at or above the faculty rank sought by the candidate. Williams Decl., ¶ 8.

8.    If the promotions committee supports the application at the first screening, the departmental chairperson then prepares a written Chair's Report, assessing the candidate's accomplishments and suitability for promotion, and solicits evaluations of the candidate's scholarship from scholars in his or her discipline from outside the college.  Williams Decl., ¶ 9.    These documents become part of the application packet, which is then considered by the departmental promotions committee at a "second screening," which makes an independent assessment of the candidate based upon the established criteria, and, by confidential ballot, makes a positive or negative recommendation.   Id.

9.    If the vote of the departmental promotions committee at the second screening is a positive recommendation, the chairperson of the departmental promotions committee forwards the committee's recommendation and the candidate's file to a divisional Personnel & Budget ("P&B") Committee for its assessment.   Williams Decl., ¶ 9.

10.    If the departmental promotions committee does not support the application at the first screening, the applicant may

3

nonetheless compel a second screening by notifying the dean of his or her division.  Williams Decl., ¶ 10.  The divisional dean then directs the chairperson to prepare the Chair's Report, solicit outside review letters, and arrange a second screening by the departmental promotions committee.  Id.

11.  If the departmental promotions committee does not support the application at the second screening, the applicant may nonetheless compel a review by the divisional P&B Committee by appealing to the divisional dean.  Reynolds Decl., ¶ 11; Williams Decl., ¶ 12.

12.  The voting members of the divisional P&B Committee include all chairpersons of the departments within the division. Williams Decl., ¶ 11.  The dean of the division is a non-voting member of the committee.  Id.

13.  At the divisional P&B Committee, the promotion application is presented by the chairperson of the faculty member's department.  Williams Decl., ¶ 12.   Following the presentation, the members of the committee independently review the candidate's application in light of the criteria for promotion, and, by confidential ballot, make a positive or negative recommendation.  Id.

14.  If the P&B Committee's vote is positive, the recommendation and the promotion application are forwarded to the college-wide Review Committee for its consideration.  Williams

Decl., ¶ 13. If the P&B Committee's vote is negative, the
application is forwarded to the Review Committee only if the
applicant appeals the negative recommendation of the P&B
Committee. Id.

15.    For the purposes of personnel actions, like promotion,
the voting members of the Review Committee are the deans of the
divisions and schools that constitute CCNY and the Provost.
Williams Decl., ¶ 14. The Review Committee independently reviews
the promotion application, and, by confidential ballot, makes a
positive or negative recommendation for promotion. Id.

16.    If the Review Committee's vote is positive, the
recommendation and the promotion application are forwarded to the
president of CCNY for his consideration. Williams Decl., ¶ 15.
If the Review Committee's vote is negative, the applicant is
notified of the negative recommendation, and is given an
opportunity to appeal the negative recommendation to the
president. Id. If there is such an appeal, the applicant is
given an opportunity to submit additional materials in support of
his or her candidacy. Id.

17.    Where an applicant appeals a negative recommendation of
the Review Committee, the president makes a separate and
independent review of the promotion application. Williams Decl.,
¶ 17. The president is not required to afford any deference to
the recommendations of the departmental promotions committee, the

5

P&B Committee, or the Review Committee, regarding the promotion application.  Id.

18.  Only the names of those individuals whom the president affirmatively recommends for promotion are transmitted to the Chancellor and CUNY Board of Trustees for final approval. Williams Decl., ¶ 16.

19.  If the president does not recommend promotion, he is required to notify the applicant, in writing, that his or her promotion will not be recommended to the Chancellor and CUNY Board of Trustees.  Williams Decl., ¶ 18.  The applicant may then request a written statement of reasons for the president's negative recommendation, which must be supplied under the collective bargaining agreement between CUNY and the faculty union.  Id.

20.  If the president recommends promotion, he conveys the recommendation to the Chancellor and the CUNY Board of Trustees and notifies the candidate, in writing, that his or her promotion is being recommended.  Williams Decl., ¶ 19.

21.  Plaintiff has applied for promotion to the rank of Professor on three occasions, in the 2003-2004, 2004-2005, and 2005-2006 academic years, respectively.  Hinton Depo. at 20-22.

**The First Application In The 2003-2004 Academic Year**

22.  On October 15, 2003, Linsey Abrams, the chair of the English Department at CCNY, sent a bulletin to all faculty in the

6

department advising "[f]aculty members who are considering putting themselves forward for promotion this year [to] speak with me as soon as possible."   Abrams Decl., ¶ 4.

23.   During the Fall 2003 semester, plaintiff did not advise Chair Abrams of her intention to seek promotion to the rank of Professor.   Abrams Decl., ¶¶ 5-6.

24.   On February 3, 2004, just two days before the departmental promotions committee was scheduled to meet to consider the application of another faculty member for promotion to full Professor, plaintiff left a memorandum and <u>curriculum vitae</u> in the college mailbox of Chair Abrams announcing her intention to be considered for promotion to full Professor. Abrams Decl., ¶ 6.

25.   On February 5, 2004, the departmental promotions committee met and voted not to consider plaintiff's late request for promotion consideration.   Abrams Decl., ¶ 7.   No further action was taken on her application.   <u>Id.</u>, ¶ 8.

26.   The other faculty member in the English Department who applied for promotion to the rank of Professor in the 2003-2004 academic year, and who was considered by the departmental promotion committee on February 5, 2004, was Professor Elizabeth Mazzola.   Abrams Decl., ¶ 10.

27.   In the Spring 2003 semester, Professor Mazzola had notified Chair Abrams of her intention to seek promotion

consideration, because Professor Mazzola was scheduled to be out on maternity leave during the Fall 2003 semester. Abrams Decl., ¶ 10.

28. Professor Mazzola's application was considered on February 5, 2004, received a positive recommendation from the departmental promotions committee, and was ultimately approved by the President and the CUNY Board of Trustees. Abrams Decl., ¶ 11.

29. Since he assumed the positions of Deputy Dean and Dean, starting in September 2003, defendant Reynolds has not participated in any promotion considerations at the departmental level. Reynolds Decl., ¶¶ 5, 14. Thus, defendant Reynolds was not present at the time the departmental promotions committee voted not to consider plaintiff's first application, and had no role in its determination. Id., ¶ 15.

**The Second Application In The 2004-2005 Academic Year**

30. On October 4, 2004, plaintiff submitted a new application for promotion to Professor. Abrams Decl., ¶ 9.

31. On February 3, 2005, the departmental promotions committee held a first screening of plaintiff's second application for promotion and voted not to advance her application to a second screening. Reynolds Decl., ¶ 17.

32. Plaintiff appealed that decision, and a second screening was held on May 5, 2005, at which time her application

8

received a negative recommendation from the departmental
promotions committee. Reynolds Decl., ¶ 17.

33. Defendant Reynolds was not present at the time the
departmental promotions committee considered plaintiff's second
application and did not vote. Reynolds Decl., ¶ 17.

34. Plaintiff appealed the negative recommendation of the
promotions committee, and, thus, triggered a review by the
divisional P&B Committee. Reynolds Decl., ¶ 18.

35. The Department of English is part of the Division of
Humanities & The Arts at CCNY. Williams Decl., ¶ 11. Therefore,
plaintiff's promotion application was reviewed by a P&B Committee
comprised of the chairpersons of the departments of Art, English,
Foreign Languages, History, Media and Communication Arts, Music,
Philosophy, and Theatre. Id.

36. At the P&B Committee, plaintiff's promotion application
was orally presented by the then-Chair of the English Department,
Joshua Wilner. Reynolds Decl., ¶ 19. The questions asked of
Chair Wilner by the committee members focused on plaintiff's
publication record, and whether her scholarship was of sufficient
quality to support a promotion to the rank of full Professor.
Id.

37. During the deliberations of the P&B Committee neither
plaintiff's gender nor any grievance or complaint filed by her
was ever mentioned or discussed. Reynolds Decl., ¶ 20.

9

38. Following Chair Wilner's presentation, the P&B Committee members collectively voted not to recommend promotion. Reynolds Decl., ¶ 21.

39. Defendant Reynolds, as Dean of the Division of Humanities & The Arts, is a non-voting member of the divisional P&B Committee and did not vote on plaintiff's promotion application. Reynolds Decl., ¶ 21.

40. Plaintiff appealed the negative recommendation of the divisional P&B Committee on her second promotion application to the college-wide Review Committee. Reynolds Decl., ¶ 22.

41. Plaintiff's promotion application was presented to the members of the Review Committee by defendant Reynolds in his capacity as Dean of the Division of Humanities & The Arts. Reynolds Decl., ¶ 22. Neither plaintiff's gender nor any complaint she previously made was discussed by the members of the Review Committee. Id. Rather, the discussion focused on the quality of plaintiff's scholarship. Id.

42. On November 30, 2005, the eight voting members of the Review Committee unanimously voted not to recommend plaintiff's promotion to the rank of Professor. Reynolds Decl., ¶ 23.

43. Plaintiff appealed the negative recommendation of the Review Committee and, therefore, consideration of plaintiff's second promotion application passed to President Williams, who under the Bylaws is required to make his own independent

determination on promotion.  Williams Decl., ¶ 20.

44.  Under § 11.4 of the CUNY Bylaws, President Williams is
charged with the "affirmative responsibility" of recommending for
promotion only those individuals who he is "reasonably certain
will contribute to the improvement of academic excellence at the
college."  Williams Decl., ¶ 4.

45.  President Williams independently reviewed plaintiff's
promotion materials submitted as part of her second application
for promotion, and decided not to recommend her for promotion to
the rank of full Professor.  Williams Decl., ¶ 21.

46.  President Williams found that, in his academic
judgment, plaintiff's scholarship did not satisfy the criteria
for promotion to the rank of Professor.  Williams Decl., ¶ 21.

47.  By a letter dated May 11, 2006, President Williams
notified plaintiff of his decision not to recommend her for
promotion to Professor.  Williams Decl., ¶ 23.  At her request, a
statement of reasons for the decision was provided to plaintiff
in a letter dated June 8, 2006.  Id.

48.  Defendant Reynolds had no communications with President
Williams about the president's decision on Dr. Hinton's
application, and was not involved in President Williams' decision
regarding the second application for promotion to the rank of
Professor.  Reynolds Decl., ¶ 24.  The appeal from the negative
recommendation of the Review Committee was decided by President

11

Williams.  Williams Decl., ¶ 21.

49.  At no time did plaintiff's gender, or any complaint or
grievance she filed, have any role in President Williams'
consideration of her application for promotion.  Williams Decl.,
¶ 27.

**The Third Application In The 2005-2006 Academic Year**

50.  In Fall 2005, plaintiff submitted a third application
for promotion to the rank of Professor.  Williams Decl., ¶ 24.
The application was submitted before President Williams had
rendered a decision on her second application for promotion.  Id.

51.  On February 2, 2006, the promotions committee of the
English Department, chaired by the departmental chairperson
Joshua Wilner, conducted a first screening of plaintiff's third
application and voted to advance it to a second screening.
Reynolds Decl., ¶ 26.

52.  On April 27, 2006, the departmental promotions
committee, now chaired by Mark Mirsky, voted to positively
recommend plaintiff's third application for promotion.  Reynolds
Decl., ¶ 27.

53.  Defendant Reynolds was not present when the
departmental promotions committee considered plaintiff's third
application.  Reynolds Decl., ¶¶ 26-27.

54.  On April 28, 2006, plaintiff's third promotion
application was considered by divisional P&B Committee.  Reynolds

12

Decl., ¶ 28. Chair Mirsky presented plaintiff's application to the committee members. Id.

55. As they had the year before, the committee members focused their discussion on the quality of plaintiff's scholarship, and whether its caliber was sufficiently high to warrant promotion. Reynolds Decl., ¶ 28. Neither plaintiff's gender nor any complaints made by her were discussed. Id.

56. The members of the P&B Committee unanimously voted not to recommend plaintiff's third application for promotion. Reynolds Decl., ¶ 29. Plaintiff appealed this decision. Id.

57. On December 1, 2006, the college-wide Review Committee considered plaintiff's third promotion application. Reynolds Decl., ¶ 29. The discussion of the Review Committee focused on the fact that plaintiff's third application was substantially the same as the second application, which it considered the year before. Id.

58. The Review Committee voted not to recommend plaintiff's third application for promotion. Reynolds Decl., ¶ 29. Plaintiff has appealed this decision. Williams Decl., ¶ 25.

59. No decision has yet been issued on plaintiff's appeal from the negative recommendation of the Review Committee concerning plaintiff's third application for promotion to Professor. Williams Decl., ¶ 26.

13

**EEOC Proceeding**

60. On February 3, 2004, the same date of her first application for promotion, plaintiff filed a one-page charge of discrimination with the Equal Employment Opportunity Commission. See Banks Decl., Exhibit D. At a later date, plaintiff supplemented the charge with a four-page narrative discussion in which contains a one-sentence reference to her denial of promotion in "early 2004." Id.

61. Plaintiff's administrative charge makes no reference whatsoever to plaintiff's two most recent promotion applications in the 2004-2005 and 2005-2006 academic years, respectively. See Banks Decl., Exh. D.

**Teaching Assignment**

62. Plaintiff's Spring 2003 teaching assignment, and those of other full-time faculty in the English Department, were scheduled in the Fall 2002. Reynolds Decl., ¶ 32. Faculty members in the English Department were assigned courses for the Spring 2003 semester based on their own stated preferences. Id.

63. Plaintiff made no objections in Fall 2002 about her assignment for the Spring 2003 semester. Reynolds Decl., ¶ 32.

**Classroom Assignment**

64. Defendant Reynolds was Deputy Dean of the Division of Humanities & The Arts in Fall 2004. Reynolds Decl., ¶ 5. In that capacity, he was not responsible for making classroom

14

assignments.  Id., ¶ 33.

65.  Responsibility for assigning classroom space, and responding to faculty complaints about classroom space, at CCNY rests with the Registrar's Office and the departmental chairperson.  Reynolds Decl., ¶ 33.

**Grant Applications**

66.  In Fall 2002, plaintiff requested that defendant Reynolds, as chairperson of the Department of English, sign a transmittal cover sheet which was to accompany a grant application.  Reynolds Decl., ¶ 34.  In the transmittal sheet, Chair Reynolds was asked to endorse a statement that "the scope of the project [to be funded] will not interfere with the [faculty member's] professional obligations."  Id.  However, the documents plaintiff had submitted in support of this request did not describe the project for which she sought grant funding.  Id.

67.  Defendant Reynolds signed the transmittal cover sheet, without requiring plaintiff to substantiate her request.  Reynolds Decl., ¶ 34; Hinton Depo. at 151  She subsequently received the grant.  Hinton Depo. at 151.

**Hiring Committees**

68.  The members of a departmental hiring committee are selected by the departmental chairperson.  Reynolds Decl., ¶ 35.  The committee itself is generally charged with interviewing candidates for a particular faculty vacancy, and collectively

15

recommending a candidate to the divisional dean.  Id.  Faculty

hiring decisions are made by the President, subject to the

approval of the CUNY Board of Trustees.  Id.

69.  Faculty members do not receive any compensation, or any

other material benefit, for service on a hiring committee.

Reynolds Decl., ¶ 36.

70.  Given the temporary ad hoc nature of hiring committees,

service on a hiring committee is not generally considered

prestigious.  Id.

71.  Plaintiff did not request to serve on a hiring

committee during the 2002-2003 academic year.  Reynolds Decl., ¶

37.

### Observation Assignment

72.  Full-time faculty at CCNY are routinely asked to

observe and evaluate the teaching performance of adjunct faculty.

Reynolds Decl., ¶ 38.  In October 2002, Reynolds, in his capacity

as chairperson of the English Department, asked plaintiff to

observe an adjunct faculty member working in the English

Department.  Id.

73.  Plaintiff rejected the observation assignment request,

alleging that she had a severe and chronic medical condition.

Reynolds Decl., ¶ 38.

74.  At plaintiff's request, Chair Reynolds excused her from

fulfilling the observation request.  Reynolds Decl., ¶ 39.

16

**Sick Call**

75. In February 2003, faculty in the English Department, including plaintiff, were not required to speak to the chairperson, Reynolds, when they were sick and unable to come to work. Reynolds Decl., ¶ 41.

**Hostile Work Environment**

76. Plaintiff alleges that she was subjected to a hostile work environment based on gender. See Compl., ¶ 2.

77. At her deposition, plaintiff testified that the hostile work environment consisted of statements made by Dean William Herman and Professor Steven Urkowitz in the 1990's. Hinton Depo. at 29, 35, 41, 48-49, 126-27.

78. Specifically, plaintiff alleged that (1) in 1991, Dean William Herman told her that she had the "sexiest legs," Hinton Depo. at 41; (2) in 1994, Professor Steven Urkowitz told another faculty member outside plaintiff's presence that "[b]lack women were making complaints because of [plaintiff's] blonde hair and blue eyes," id. at 29, 48-49; and (3) in 1997, Professor Urkowitz humiliated her by getting on his knees in a prayer position and calling her a "sentimental heroine begging for money," id. at 35. Plaintiff could not identify any other comments that could constitute harassment. Id. at 126-27.

79. Plaintiff included these allegations in a charge of discrimination filed with the EEOC in July 1998. Banks Decl.,

17

Exh. G.

80.   Plaintiff did not commence any action in connection
with the 1998 charge of discrimination.   Banks Decl., ¶ 11.

81.   These allegations concerning a hostile work environment
were not included in the charge of discrimination filed on
February 3, 2004.   Banks Decl., Exh. D.

Dated:    New York, New York
          March 30, 2007

                              ANDREW M. CUOMO
                              Attorney General of the
                               State of New York
                              Attorney for Defendants
                              By:

                              STEVEN L. BANKS (SB-4858)
                              Assistant Attorney General
                              120 Broadway - 24th Floor
                              New York, New York 10271
                              (212) 416-8621
                              Steven.Banks@oag.state.ny.us

18